■ Donna Snyder, Appellant, v John W. Simon et al., Respondents. [853 NYS2d 195]—

Mercure, J.P.

After noticing that her long-standing esotropia, a condition which caused her right eye to turn inward, had worsened, plaintiff discussed the possibility of eye surgery with her optometrist, defendant Albert Morier. Morier referred plaintiff to defendant John W. Simon, an ophthalmologist at defendant Lions Eye Institute of defendant Albany Medical Center Hospital. At Simon's request, defendant David J. Hodgetts, an orthoptist, took various measurements and fitted plaintiff for prisms on her glasses in connection with the possible eye surgery. In May 2000, Simon performed eye muscle surgery on plaintiff. Thereafter, plaintiff complained of diplopia (double vision), pain and exotropia, i.e., outward turning, of the right eye. In August 2000, after continued complaints from plaintiff, Simon performed a second surgery and deemed the result "ideal."

Nevertheless, plaintiff commenced this action pro se in 2003, alleging that Simon committed malpractice in performing the surgeries, causing disabling injuries to her right eye and severe pain, and that Simon failed to obtain her informed consent. Following joinder of issue, Supreme Court granted defendants' motion for summary judgment dismissing the complaint and denied plaintiff's cross motion for summary judgment. Plaintiff appeals and we now modify by reinstating her informed consent claim against Simon, Lions Eye Institute and Albany Medical Center Hospital.

Plaintiff does not dispute that defendants made a prima facie showing of entitlement to summary judgment; rather, she asserts that her three expert witness affidavits, considered together, created triable issues of fact regarding Simon's negligence in treating her and failing to obtain her informed consent. Initially, we note that Morier's involvement in the surgery was limited to referring plaintiff to Simon, Hodgetts' involvement was limited to performing tests and measurements

at Simon's direction without exercising independent medical judgment, and there is no indication that the tests greatly deviated from normal practice. As such, neither Morier nor Hodgetts may be held liable for any malpractice committed by Simon, and Supreme Court properly dismissed the third and fourth causes of action in the complaint against them (*see Soto v Andaz*, 8 AD3d 470, 471 [2004]; *Harrington v Neurological Inst. of Columbia Presbyt. Med. Ctr.*, 254 AD2d 129, 131 [1998]).

In order to rebut Simon's showing of entitlement to summary judgment on the malpractice claim against him as well, plaintiff was required to "establish[ ] a departure from accepted medical practice, as well as a nexus between the alleged malpractice and [her] injury" (*Rossi v Arnot Ogden Med. Ctr.*, 268 AD2d 916, 917 [2000], *lv denied* 95 NY2d 751 [2000]; *see Passero v Puleo*, 17 AD3d 953, 954 [2005]; *Stuart v Ellis Hosp.*, 198 AD2d 559, 560 [1993]). It is well settled that "[g]eneral allegations of medical malpractice, merely conclusory and unsupported by competent evidence tending to establish the essential elements of medical malpractice, are insufficient to defeat [a] defendant physician's summary judgment motion" (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 325 [1986]; *see Diaz v New York Downtown Hosp.*, 99 NY2d 542, 544 [2002]). In our view, the expert affidavits submitted by plaintiff do not identify or define the applicable standard of care, and fail to adequately set forth both the manner in which Simon deviated from the standard of care in treating plaintiff and the requisite nexus between that alleged malpractice and the injuries to plaintiff. The affidavits are generalized, conclusory and insufficient to establish the elements of a medical malpractice claim or raise a question of fact on her claim that Simon deviated from accepted medical practice in treating her, thereby injuring her (*see Passero v Puleo*, 17 AD3d at 954-955; *Hoffman v Pelletier*, 6 AD3d 889, 891 [2004]; *Grzelecki v Sipperly*, 2 AD3d 939, 941 [2003]; *but see Lowery v Hise*, 202 AD2d 948, 949 [1994]).

Finally, with respect to plaintiff's informed consent claim, defendants submitted the affidavit of Simon, who averred that prior to the first surgery, he extensively discussed the risks— including the particular possibility of double vision—and obtained plaintiff's informed consent. While plaintiff made no showing of qualitative insufficiency in Simon's discussion of the risks—as must be established by expert medical testimony at trial (*see* CPLR 4401-a; *King v Jordan*, 265 AD2d 619, 620 [1999])—her unequivocal assertion that Simon failed to advise her of the possibility of double vision prior to the first surgery is sufficient to create a question of fact under the circumstances of

this case (*see Lowery v Hise*, 202 AD2d at 949; *see also Santiago v Filstein*, 35 AD3d 184, 187 [2006]; *Corcino v Filstein*, 32 AD3d 201, 202 [2006]; *cf. Romatowski v Hitzig*, 227 AD2d 870, 871 [1996], *lv dismissed and denied* 89 NY2d 915 [1996]).

Peters, Spain, Carpinello and Lahtinen, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as granted defendants' motion for summary judgment dismissing the second, fifth and sixth causes of action; motion denied to that extent; and, as so modified, affirmed.